```
                                              USDC SDNY
                                              DOCUMENT
                                              ELECTRONICALLY FILED
                                              DOC #: _____
                                              DATE FILED: 5-10-11
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KESTON WATSON,

       Petitioner,

   - against -

DENNIS CROWLEY, SUPERINTENDENT,
QUEENSBORO CORRECTIONAL FACILITY

       Respondent.

---

REPORT AND
RECOMMENDATION

07 Civ. 1111 (RJS) (RLE)

To the HONORABLE RICHARD J. SULLIVAN, U.S.D.J.:

## I. INTRODUCTION

*Pro Se* Petitioner Keston Watson ("Watson"), a New York state prisoner at Wyoming Correctional Facility, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Watson's Petition was received by the *Pro Se* Office of the Northern District of New York on August 17, 2006, and the matter was transferred to this District on February 14, 2007.

On June 17, 2004, Watson was convicted of criminal sale of a controlled substance in the third degree (N.Y. Penal Law § 220.39[1]), and was sentenced as a second felony offender to an indeterminate prison term of fifty-four months to nine years. Watson contends that his conviction violates the United States Constitution because: (1) he received ineffective assistance of counsel at a suppression hearing, and (2) his conviction was obtained by the use of evidence obtained pursuant to an unlawful arrest. (Petition under 28 U.S.C. § 2254 ("Pet.") at 5.) For the reasons set forth below, I recommend that the Petition be **DENIED**.

## II. BACKGROUND

### A. Factual History

At about 11:00 p.m. on July 2, 2003, a specialized Bronx Narcotics unit executed a drug "buy and bust" undercover operation in the vicinity of 218th Street and White Plains Road in the Bronx. (Trial Transcript ("Tr.") at 346, 490, 585-86.) An undercover police officer purchased narcotics, while Detective Clinton Smith ("Smith") trailed him to provide security and a line of communication to the field team. (Tr. at 490, 496.) Detective Desmond Smyth ("Smyth") served as the lead investigator and arresting officer. (Tr. at 346.) The undercover officer testified that he approached an African American male, later identified as Watson, and asked him if "anybody [was] out" selling drugs. (Tr. at 591.) Watson was wearing a black shirt, blue jeans, black shoes, and had a bicycle. (Tr. at 594.) He asked the officer who was his source for prior drug purchases. (Tr. at 591-92.) After the officer supplied him with a few names, Watson asked him how many bags he wanted. (Tr. at 592.) The officer requested four bags, and Watson instructed the officer to meet him at a street corner a couple of blocks away. (Tr. at 593.) Watson rode ahead on his bicycle, and the officer lost sight of him. (Tr. at 594-95.)

The undercover officer, followed at a distance by Smith, started walking to the location and transmitted Watson's description over his radio to Smyth, who was in a car a few blocks away. (Tr. 596, 635-36.) When the two officers reached the corner, Smith waited across the street, and the undercover officer waited on the corner. (Tr. at 597.) A few minutes later, Watson emerged from a brushy driveway area (Tr. at 598, 639), approached the undercover officer, and handed him four plastic bags of crack cocaine (Tr. at 600). The officer gave Watson forty dollars of prerecorded buy money, and left. (Tr. at 587, 647).

As he walked to his vehicle, the undercover officer radioed Smyth that there was a "positive buy," and repeated his description of Watson, adding that he was a "young cat" and had a "crew cut." (Tr. at 360-61, 642-43, 650.) Smith transmitted that he saw Watson, and that the field team should move in on him. (Tr. at 362.) Smyth and the rest of the field team drove to the location transmitted by the undercover officer and apprehended Watson, who Smyth testified fit the description given over the radio. (Tr. at 365.) The field team positioned Watson close to the street and asked the undercover officer to confirm his identity. (Tr. at 367.) The officer drove by and positively identified Watson by radio. (Tr. at 369, 370.) After the identification, Smyth searched Watson and found one hundred and twenty-six dollars. (Tr. at 371-74, 384.) Smyth arrested Watson, and placed the recovered money and purchased bags in a prisoner property envelope. (*Id.*) It was later determined that the serial numbers on some of the recovered money matched photocopies of the prerecorded money. (Tr. at 384-85.) Robert Connor, a chemist for the New York City Police Department, analyzed the four bags, and they tested positive for cocaine. (Tr. at 570, 574-79.)

Watson was indicted on one count of criminal sale of a controlled substance in the third degree. (Tr. at 782.) Prior to trial, he challenged the lawfulness of his arrest and moved to suppress the officers' on-the-street identification testimony. (Appendix to Tr. ("App.") at 31.) In her *Dunaway* application, Watson's counsel asserted that: (1) Watson was merely present on the street and not engaged in unlawful conduct at the time of arrest; (2) the identification took place without probable cause; and (3) the arresting officer could not independently recollect the content of the radio transmission regarding the physical description of the perpetrator before arrest. (App. at 31-33.) The court denied the motion without a hearing. (App. at 24.) The court reasoned that the facts submitted in support of the motion were insufficient to warrant the relief

requested. (*Id.*) The court granted Watson's counsel leave to resubmit her application upon "appropriate allegation of fact." (*Id.*) Watson's counsel never resubmitted the motion.

On May 5, 2004, a jury convicted Watson of criminal sale of a controlled substance in the third degree. (Tr. at 782.) On June 17, 2004, the court rendered a judgment against Watson, and sentenced him as a second felony offender to a term of between fifty-four months to nine years.

## B. Procedural History

Watson appealed his conviction to the Appellate Division on April 25, 2006, and raised one claim: that he received ineffective assistance because of his trial counsel's failure to resubmit a suppression motion. *People v. Watson*, 28 A.D.3d 369 (1st Dept. 2006). In rejecting his claim, the court found that it was not reviewable on direct appeal because it involved facts outside of the record. *Id.* The court also found that, on the existing record, Watson received effective assistance under state and federal standards. *Id.* Leave to appeal to the New York Court of Appeals was denied on June 1, 2006. *People v. Watson*, 7 N.Y.3d 764 (2006). Watson also filed a post-conviction motion to set aside his sentence pursuant to N.Y. Crim. Proc. Law § 440.20, on grounds different from those he raises in this Petition. (*See* Pet. at 3, ¶ 11.)

### III. DISCUSSION

#### A. Threshold Issues

##### 1. Timeliness

A petitioner must file an application for a writ of habeas corpus within one year of his conviction becoming final. 28 U.S.C. § 2244(d)(1). A conviction becomes final "when [the] time to seek direct review in the United States Supreme Court by writ of certiorari expire[s]," that is, ninety days after the final determination by the state court. *Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001) (quoting *Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir. 1998)) (internal

4

quotations omitted). Watson's petition was received by the *Pro Se* Office of the Northern District of New York on August 17, 2006, within one year of his conviction becoming final, and it is therefore timely.

### 2. Exhaustion and Procedural Default

Pursuant to 28 U.S.C. § 2254(b), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a court may not grant a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies. 28 U.S.C. § 2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997). In order to satisfy substantive exhaustion, a petitioner's claim before the state court must have been federal or constitutional in nature. Although not an exacting standard, a petitioner must inform the state courts of "both the factual and the legal premises of the claim [he] asserts in federal court." *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (quoting *Daye v. Attorney Gen.*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*)). Procedurally, the petitioner must utilize all avenues of appellate review within the state court system before proceeding to federal court. *See Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994). A petitioner must raise a federal claim at each level of the state court "present[ing] the substance of his federal claims 'to the highest court of the pertinent state.' " *Id.* (quoting *Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990)).

Watson presented his ineffective assistance of counsel claim to the Appellate Division on direct appeal, and the court affirmed his conviction on the grounds that his claim was unreviewable on direct appeal. *Watson*, 28 A.D.3d at 369. The court also found that, on the existing record, Watson received effective assistance under state and federal standards. *Id.* Leave to appeal to the New York Court of Appeals was subsequently denied. *Watson*, 7 N.Y.3d 764. Although Watson's first claim was unreviewable on direct appeal, the court subsequently

reviewed his claim on the merits, albeit in summary fashion. If a state court does not expressly rely on a procedural deficiency in its judgment, a federal court may conduct habeas review. *Harris v. Reed*, 489 U.S. 255, 261-63 (1985); *Jones v. Stinson*, 229 F.3d 112, 118-19 (2d Cir. 2000); *see Cotto v. Herbert*, 331 F.3d 217, 238 (2d Cir. 2003). Because the Appellate Division's order does not expressly and clearly state that its judgment rested on a state procedural bar, this claim is exhausted.

Watson's unlawful arrest claim is unexhausted because it was not raised on direct appeal. Additionally, Watson did not raise this claim in a motion pursuant to N.Y. Crim. Proc. Law § 440. Notwithstanding Watson's failure to exhaust the remedies available in state court, the Court has the power to deny unexhausted claims on the merits. *See* 28 U.S.C. § 2254(b)(2).

### B. Merits of the Claims

#### 1. Standard of Review

AEDPA constrains a federal court's ability to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. The Act limits issuance of the writ to circumstances in which the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is contrary to federal law if the state court applies a "conclusion opposite to that reached by [the Supreme] Court on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. Furthermore, in cases where the state court decision rests on a factual determination, the federal court must find that the "decision . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## 2. Ineffective Assistance of Counsel Claim

The Sixth Amendment right to counsel includes the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). While the Sixth Amendment simply refers to "counsel," and does not make specific mention of what is required for effective assistance, the Amendment relies on the legal profession's maintenance of standards sufficient to justify its presumption that counsel will perform in the way it envisions. *Id.* at 688. The benchmark for determining whether assistance of counsel is inadequate is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.*

Under *Strickland*, a convicted defendant's ineffective assistance of counsel claim has two components. *Id.* First, a defendant must demonstrate that counsel's performance was deficient and included errors so serious as to deprive the defendant of "counsel" as understood by the Sixth Amendment. *Id.* Specifically, a defendant must show that counsel's "representation fell below an objective standard of reasonableness." *Id.* Courts reviewing an ineffective assistance claim must be "highly deferential" and "strongly" presume that the attorney's conduct and judgment were reasonable. *Id.* at 689-90. Additionally, a court must review the circumstances surrounding performance from counsel's perspective at the time of the decision. *Id.* at 688-89.

Second, a defendant must demonstrate that the deficient performance prejudiced the defense. *Id.* at 687. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* As the purpose of the right to counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome, errors by counsel, including those that are professionally unreasonable, will not constitute ineffective assistance if the error had no adverse effect on the trial's outcome. *Id.* at 691-92. Prejudice is assumed when

there exists a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt regarding a defendant's guilt. *Id.* at 695.

Watson's first ineffective assistance of counsel claim targets his attorney's failure to secure a *Dunaway* hearing[1] after failing to resubmit a suppression motion originally denied by the trial court. Watson argues that had his attorney resubmitted the motion, the court would have granted it, and deprived the government of the identification testimony and the prerecorded buy money. (Pet'r's Mem. of Law in Supp. of a Writ of Habeas Corpus ("Pet'r's Mem.") at 9-10.)

Under the performance component of the *Strickland* test, the failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel. *Kimmelman v. Morris*, 477 U.S. 365, 383 (1986). In the context of an alleged failure to make an appropriate suppression motion regarding a Fourth Amendment claim, *Strickland* requires that a defendant show that: (1) a competent attorney would have made the motion; (2) the suppression motion would have been successful; and (3) the outcome of the proceeding would have been different absent the excludable evidence. *Lopez v. Greiner*, 323 F. Supp. 2d 456, 472 (S.D.N.Y. 2004); *Kimmelman*, 477 U.S. at 375. Since Watson's ineffective assistance of counsel claim depends on New York search and seizure law, a habeas court must carefully analyze the state law. *Lopez*, 323 F. Supp. 2d at 472-73.

Here, it is clear that the suppression motion would not have been successful. Consistent with the Fourth Amendment, New York law permits an officer to approach a citizen on a public street and conduct a "brief, investigatory, stop" based on a "reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)); *People v. DeBour*, 40 N.Y.2d 210, 215-16 (1976) (citing *People v.*

---

[1] A hearing pursuant to *Dunaway v. New York*, 442 U.S. 200 (1979), is held to determine whether a statement or other evidence obtained from a person arrested without probable cause should be suppressed at a subsequent trial.

*Cantor*, 36 N.Y.2d 106, 114 (1975)). An officer need only offer "a minimal level of objective justification for making the stop" to establish the existence of reasonable suspicion. *Wardlow*, 528 U.S. at 123 (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

In the present case, Detective Smyth received a transmission from the undercover officer that he had made a "positive buy" from a black male with a crew cut, about 20-25 years old, six feet tall, 180 pounds, wearing a black shirt, blue jeans, black shoes, and last seen riding a bicycle in the vicinity of 220th Street and Bronxwood Avenue. (Tr. at 360, 433, 435, 438, 606.) Detective Smyth also received independent communications from Detective Smith, who followed the undercover officer and provided a location for the male. (Tr. 507.) Detective Smyth stopped Watson because he matched the description provided and no one else in the area fit the description. (Tr. 365-66.) Under these circumstances, Watson cannot show that Detective Smyth lacked reasonable suspicion to stop and temporarily detain him for an identification procedure. *See Gil v. County of Suffolk*, 590 F. Supp. 2d 360 (E.D.N.Y. 2008) (finding reasonable suspicion to detain based on dispatcher's broadcast of perpetrator's general description and officer's observation of the defendant's appearance and conduct in close proximity to the alleged crime).

Additionally, the undercover officer was driven past the location where officers had apprehended Watson, and confirmed his identity. (Tr. 606-07.) This provided probable cause to arrest Watson. *See Brown v. Brown*, 08 Civ. 10844, 2009 WL 3353022, at *4 (S.D.N.Y. Oct. 19, 2009) (finding probable cause to arrest and search defendant where defendant matched description and positive show-up identification made within minutes of narcotics sale). After the arrest, the officers searched Watson and found the forty dollars in prerecorded buy money. (Tr. 371-72, 385.) Consequently, the money was properly recovered in a search incident to a lawful

arrest.

Inasmuch as reasonable suspicion and probable cause existed to detain and arrest Watson, Watson's counsel decision not to resubmit the suppression motion was not objectively unreasonable. Watson contends that if the suppression motion was resubmitted, he would have been granted a hearing where he would have been able to establish that the radio broadcast did not accurately describe him. (Pet'r's Mem. at 5-8.) Even if a subsequent motion resulted in the grant of a hearing, the circumstances of Watson's arrest do not suggest that a hearing would have resulted in the suppression of the identification testimony or the prerecorded buy money. Watson's counsel also likely concluded that the facts of his case provided no legal basis to support suppression. The failure to assert a meritless argument does not fall outside the "professionally competent assistance" to which Watson was entitled. *See Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001). Therefore, Watson fails to establish that his trial counsel's performance was deficient, and that he was prejudiced as a result.

Watson also argues that he was denied effective assistance of counsel because his attorney did not properly marshal the facts and the law to get a suppression hearing. (*See* Pet. at 5, ¶ 12A.) Specifically, Watson argues that his trial counsel failed to coherently challenge the sufficiency of the broadcast description in her suppression motion by plainly declaring that there was a lack of proof that the radio broadcast accurately described Watson. (Pet'r's. Mem. at 5-6.) He claims that had his trial counsel recounted what he wore on the night of his arrest or that other individuals matching his description were present in the area, a suppression hearing would have been granted. (*Id.* at 8.) Watson argues that his counsel lost an opportunity to probe the State's evidence when she failed to secure a suppression hearing. (*Id.* at 10.) Although the defense might have learned more about the prosecution's case at a suppression hearing, Watson

fails to demonstrate how the lost opportunity changed the outcome of his trial. There is no reason to assume that the officers would have testified differently at a suppression hearing than they did at trial. Therefore, even assuming that Watson's counsel's failure to get a suppression hearing was objectively unreasonable, Watson has not shown how he was prejudiced.

Accordingly, the state court's determination of this issue was neither contrary to nor an unreasonable application of *Strickland*, and the Court recommends that the claim be **DENIED**.

### 3. Conviction Obtained by Use of Evidence Obtained Pursuant to Unlawful Arrest Claim

Where a state "has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976); *see Gates v. Henderson*, 568 F.2d 830, 839 (2d Cir. 1977). A federal court may undertake habeas review only in one of two instances: (1) "if the state provides no corrective procedures at all to redress the Fourth Amendment violations," or (2) if "the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process . . . ." *Gates*, 568 F.2d at 840. A denial of a petitioner's claim under *Stone* constitutes a decision on the merits. *Graham v. Costello*, 299 F.3d 129 (2d Cir. 2002).

A petitioner receives a "full and fair opportunity" to litigate his Fourth Amendment claim where the state provides a "'statutory mechanism' for suppression of evidence tainted by an unlawful search and seizure." *McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 69 (2d Cir. 1983) (quoting *Gates*, 568 F.2d at 837). New York provides defendants with the requisite corrective procedures pursuant to N.Y. Crim. Pro. Law § 710.10 et seq. (McKinney 2011), and federal courts have approved its procedure for litigating Fourth Amendment claims. *Capellan v.*

11

*Riley*, 975 F.2d 67, 70 n. 1 (2d Cir. 1992).

In this case, Watson was provided with the opportunity to fully adjudicate his suppression motion in state court. Although the trial court denied Watson's motion for a *Dunaway* hearing, the court granted leave to resubmit his motion for a hearing. Watson failed to avail himself of this opportunity. Watson has failed to show that an "unconscionable breakdown" occurred in New York's corrective process and prevented him from pursuing his *Dunaway* claim. The Second Circuit has not expanded on what precisely constitutes an "unconscionable breakdown" in a state's procedure for litigating Fourth Amendment issues, *Capellan*, 975 F.2d at 70, but subsequent court decisions applying the standard make clear that a court's failure to conduct a reasoned inquiry into a petitioner's claim or a disruption or obstruction of a state proceeding, are the types of circumstances constituting "unconscionable breakdown." *Calderon v. Perez*, No. 10 Civ. 2562, 2011 WL 293709, at *32 (S.D.N.Y. Jan. 28, 2011) (citing cases).

Watson contends that he failed to raise his second claim because of his trial counsel's ineffective assistance and his failure to communicate in a timely manner. (*Id.* at 6, ¶ 13.) Nevertheless, "[w]here petitioners have either taken advantage of an opportunity to present Fourth Amendment claims or deliberately bypassed the procedure . . . courts within this circuit have refused to equate ineffective assistance of counsel with unconscionable breakdown." *Shaw v. Scully*, 654 F. Supp. 859, 865 (S.D.N.Y. 1987) (citing cases); *see Wallace v. Artus*, 05 Civ. 567, 2006 WL 738154, at *7 (S.D.N.Y. Mar. 23, 2006). Therefore, Watson's second claim is not cognizable upon habeas review.

Additionally, even if Watson's second claim were cognizable, as discussed in Watson's ineffective assistance of counsel claim, the police had a sufficient basis to detain Watson based on the broadcast description and his proximity to the crime scene, and had probable cause to

12

arrest him after the undercover officer identified him. Accordingly, the court recommends that Watson's claim be **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, I recommend that Watson's petition for a writ of habeas corpus be **DENIED**. Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Richard J. Sullivan, 500 Pearl Street, Room 640, New York, and to the chambers of the undersigned, 500 Pearl Street, Room 1970, New York, New York. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

**DATED: May 10, 2011**
**New York, New York**

**Respectfully Submitted,**

*/s/ Ronald L. Ellis*

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

**Copies of this Report and Recommendation were sent to:**

<u>Petitioner</u> (sent to two addresses)
Keston Watson
04-R-3262
Collins Correctional Facility
P.O. Box 340
Collins, NY 14034-0340

Keston Watson
04-R-3262
Wyoming Correctional Facility
3203 Dunbar Road
P.O. Box 501
Attica, New York 14011-0501

<u>Respondent's attorney</u>
Nancy Darragh Killian
Bronx District Attorney
198 E. 161st Street
Bronx, NY 10451